KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., and ELENA KARBUSHEVA, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| REDWOOD APARTMENTS, REDWOOD APTS. LIMITED LIABILITY PARTNERSHIP, GLENDA J. MORTON, CAROL WATERFALL, and JANICE I. ALEXANDER, | ) ) ) ) ) ) |
| Defendants. | ) ) |

CASE NO. CV 13-473 _____

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

COMES NOW the Plaintiffs Intermountain Fair Housing Council, Inc. and Elena

Karbusheva, and for a cause of action against the Defendants Redwood Apartments, Redwood

Apts. Limited Liability Partnership, Glenda J. Morton, Carol Waterfall, and Janice I. Alexander,

state and allege as follows:

### NATURE OF THE ACTION

1. This is an action brought by the above-named Plaintiffs for declaratory judgment,

permanent injunctive relief, and damages on the following bases:

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

1

a.  Fair Housing Act, 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604;

ii.  Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604;

iii.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c); and

iv. Interference, coercion or intimidation, 42 U.S.C. §3617.

b.  Fair Housing Regulations, 24 C.F.R. §100 et seq.

c.  Negligence.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Boise, County of Ada, State of Idaho.

## PARTIES

3.  The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 5460 West Franklin Road, Suite M, Boise, Idaho 83705.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability").  IFHC serves

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

2

housing consumers through, among other things, housing counseling, education on the fair housing laws and assistance with complaints.

4.   The Plaintiff Elena Karbusheva (hereinafter "Karbusheva") is an individual residing at 2209 West Idaho Street, Boise, Idaho 83702.

5.   The Defendant Redwood Apartments (hereinafter "Defendant Redwood" or "Subject Property") is an unincorporated business doing business in the State of Idaho.  Defendant Redwood is a multifamily apartment complex, is the real property that is the subject of this proceeding, and is located at 509 South 13th Street, Boise, Idaho 83702.  The Subject Property is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

6.   The Defendant Redwood Apts. Limited Liability Partnership (hereinafter "Defendant Redwood Apts. LLP") is a limited liability partnership registered with the Idaho Secretary of States' Office and doing business in the State of Idaho.  The Defendant Redwood Apts. LLP is of record with the Ada County Assessor's Office as the owner of the Subject Property, and its principle place of business is of record with the Ada County Assessor's Office as 2866 South Nephrite Way, Meridian, Idaho 83642.

7.   Glenda J. Morton (hereinafter "Defendant Morton") is a Partner of the Defendant Redwood Apts. LLP.  Her address of record with the Idaho Secretary of State's Office is 2866 South Nephrite Way, Meridian, Idaho 83642.  The Defendant Morton is of record with the Idaho Secretary of State's Office as the Registered Agent for the Defendant Redwood Apts. LLP.

8.   The Defendant Carol Waterfall (hereinafter "Defendant Waterfall") is a Partner of the Defendant Redwood Apts. LLP.  Her address of record with the Idaho Secretary of State's Office is 7684 Galloway Drive, San Jose, California 95135.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

3

9.  The Defendant Janice I. Alexander (hereinafter "Defendant Alexander") is a Partner of the Defendant Redwood Apts. LLP.  Her address of record with the Idaho Secretary of State's Office is 134 Henderson Street, Eureka, California 95501.

STANDING OF PLAINTIFF IFHC

10.  The Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-9 above.

11.  IFHC has suffered damages as the result of the Defendants' actions and omissions, including the diversion of IFHC's past and future resources, lost economic opportunity, and the frustration of IFHC's mission.

12.  IFHC's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering IFHC's efforts to educate the public on fair housing issues and to advance equal access to housing.  IFHC's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

13.  In order to counteract the frustration of IFHC's mission, IFHC has had to devote significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, IFHC has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, IFHC will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the

VERIFIED COMPLAINT AND                                4
DEMAND FOR JURY TRIAL

monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

14.  As a direct result of the Defendants' actions and omissions as described below, IFHC is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  IFHC has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

<u>GENERAL ALLEGATIONS</u>

15.  The Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-14 above.

16.  The Defendants Morton, Waterfall and Alexander are property managers with regards to the Subject Property.

17.  Karbusheva is an adult refugee from Uzbekistan, her native language is Russian, she has limited proficiency with the English language, and she is "handicapped", as that term is defined at 42 U.S.C. §3602(h) (the words "handicap" and "disability" are used interchangeably herein).  As a result of Karbusheva's handicap, she is mobility impaired and requires the use of a cane or a motorized cart as assistive devices.

18.  On or about the 30th day of June, 2011, Karbusheva responded to an advertisement that an apartment was available at the Subject Property and applied for residency at the Subject Property at the business office of the Subject Property.  At the time she applied for residency at the Subject Property, Karbusheva was accompanied by Jesse Fessenden, Karbusheva's case worker from El-Ada Community Partnership, a non-profit housing advocacy organization located at 2250 South Vista Avenue, Boise, Idaho 83704 (hereinafter "El-Ada").

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

19.  While applying for residency at the Subject Property and in the presence of Jesse Fessenden, the Defendant Morton, who was receiving Karbusheva's application, inquired into the nature and severity of Karbusheva's disability, stating that she needs to know this information because Karbusheva might fall and sue the Defendant Morton and the Subject Property.  The inquiry into the nature or severity of Karbusheva's disability by the Defendant Morton is a violation of fair housing regulations.  24 C.F.R. §100.202(c).

20.  Furthermore, the Defendant Morton told Karbusheva that she would not be able to rent one apartment that was available at the Subject Property because she would not be permitted by the Defendants to park her motorized cart at that particular apartment.  The Defendant Morton therefore steered Karbusheva to a different apartment at the Subject Property.  However, the Defendant Morton discouraged Karbusheva from renting that other apartment as well, stating that the motorized cart would not be secure and that she would have difficulty accessing the apartment in the winter due to icy conditions.  Such conduct constitutes discrimination in the rental of a dwelling, otherwise making unavailable a dwelling, discrimination in the terms, conditions or privileges of the rental of a dwelling, and steering in violation of 42 U.S.C. §3604(f).

21.  Ultimately, the Defendant Morton stated to Karbusheva and Jesse Fessenden that she would not rent to Karbusheva because she is "an insurance liability" as the result of her disability, and expressly steered Karbusheva to a different multifamily property at a different location to seek housing.  Such statements constitute discrimination in the sale or rental of a dwelling to a renter, otherwise made unavailable a dwelling, and discrimination in the terms, conditions, or privileges in connection with such dwelling, because of a handicap in violation of the FHA.  42 U.S.C. §3604(f).  Such statements further constitute notices, statements or

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

advertisements with respect to the rental of a dwelling which indicates a preference, limitation, or discrimination based on "handicap" in violation of the FHA. 42 U.S.C. §3604(c).

22. Karbusheva and Jesse Fessenden asserted Karbusheva's right to be free from housing discrimination and her right to equal opportunity in housing.  As a result of that assertion of Karbusheva's fair housing rights, the Defendant Morton denied rental housing to Karbusheva and expressly steered Karbusheva to a different multifamily property at a different location to seek housing.  Such conduct constitutes coercion, intimidation, threat, or interference with Karbusheva's exercise or enjoyment of rights granted to her pursuant to the FHA, in violation of the FHA.  42 U.S.C. §3617.

23. As a result of the Defendants' discriminatory conduct, Karbusheva suffered an inordinate amount of stress, humiliation, and anxiety, and her health significantly deteriorated. She was forced to continue living in temporary housing at a hotel until she could secure permanent, non-discriminatory housing.

24. On or about the 30th day of June, 2011, Dalynn Kuster, an employee of El-Ada, contacted Zoe Ann Olson, then an attorney at Idaho Legal Aid Services, Inc., on Karbusheva's behalf to ask Ms. Olson to intervene with regards to the Defendants' denial of an apartment to Karbusheva.  As a result, Ms. Olson contacted the Defendant Morton to discuss the matter.  Ms. Olson fully explained the protections of the FHA to the Defendant Morton and that she is prohibited from inquiring into the nature or severity of an applicant's disability.  During the course of said conversation, the Defendant Morton admitted to Ms. Olson that she did in fact inquire into the nature or severity of Karbusheva's disability because she feels that she has the right to know such information and because she feels that she is the victim.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

7

25.  The Defendant Morton further admitted to Ms. Olson that she stated to Karbusheva that she was concerned that Karbusheva was an insurance liability and that she steered her to a different multifamily property at a different location to seek housing for that reason.  The Defendant Morton further admitted to Ms. Olson that she had previously denied a loft apartment to mother with a minor child because she was concerned that the minor child might fall.

26.  On or about the 1st day of July, 2011, the Defendant Morton contacted IFHC to discuss the matter.  Ms. Olson was working at the offices of IFHC at the time and answered the telephone on behalf of IFHC.  Ms. Olson again discussed the matter with her, again fully explaining the protections of the FHA to the Defendant Morton and that she is prohibited from inquiring into the nature or severity of an applicant's disability.  Ms. Olson suggested that the Defendant Morton call IFHC again when a staff member is present and can further discuss the matter with an employee of IFHC.

27.  On or about the 5th day of July, 2011, the Defendant Morton again contacted IFHC and discussed the matter with Peggy Sedivy, and employee of IFHC.  During the course of her conversation with Ms. Sedivy, the Defendant Morton inquired into her right to not rent to an applicant with a physical disability and expressed her concern that such an individual might hurt herself while residing at the Subject Property and was therefore an insurance liability.  She also admitted that she steered Karbusheva to a different multifamily property at a different location to seek housing for that reason.

28.  The Defendants have continued to deny housing to Karbusheva because of her disability and Karbusheva's right to equal opportunity in housing has thereby been denied by the Defendants, in violation of the FHA.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

29.  As a result of such discriminatory conduct, Karbusheva filed an administrative complaint with the United States Department of Housing and Urban Development (hereinafter "HUD") on or about the 20th day of July, 2011.

30.  As a result of its investigation of this matter and the discriminatory conduct to which the Defendants subjected Karbusheva, IFHC filed an administrative complaint with HUD on or about the 21st day of August, 2011.

<u>COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP"<br>IN VIOLATION OF THE FAIR HOUSING ACT</u>

31.  The Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-30 above.

32.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap", in violation of the FHA.  42 U.S.C. §3604(f)(1).

33.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap", in violation of the FHA.  42 U.S.C. §3604(f)(2).

34.  The Defendants made, printed or published notices, statements, or advertisements with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", in violation of the FHA.  42 U.S.C. §3604(c).

35.  Such conduct is continuing and therefore constitutes a continuing violation.

36.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the Plaintiffs.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

9

<u>COUNT TWO—INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF
THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS</u>

37.   The Plaintiffs reallege and herein incorporate by reference the allegations set forth in

Paragraphs 1-36 above.

38.   The Defendants have engaged in coercion, intimidation, threat, or interference with

Karbusheva's exercise or enjoyment of rights granted to her pursuant to the FHA, in violation of

the FHA.  42 U.S.C. §3617.

39.   Such conduct is willful and intentional, and exhibits reckless or callous indifference

for the rights of the Plaintiffs.

<u>COUNT THREE—UNLAWFUL INQUIRY INTO THE NATURE OR SEVERITY
OF A DISABILITY IN VIOLATION OF FAIR HOUSING REGULATIONS</u>

40.   The Plaintiffs reallege and herein incorporate by reference the allegations set forth in

Paragraphs 1-39 above.

41.   The Defendants have violated fair housing rights by inquiring into the nature or

severity of Karbusheva's disability, in violation of fair housing regulations.  24 C.F.R.

§100.202(c).

42.   Such conduct is willful and intentional, and exhibits reckless or callous indifference

for the rights of the Plaintiffs.

<u>COUNT FOUR—NEGLIGENCE</u>

43.   The Plaintiffs reallege and herein incorporate by reference the allegations set forth in

Paragraphs 1-42 above.

43.   The Defendants owed a duty of care to use reasonable care to avoid injury and to

prevent unreasonable, foreseeable risks of harm to the Plaintiffs.

VERIFIED COMPLAINT AND              10
DEMAND FOR JURY TRIAL

44.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiffs.

45.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiffs by failing to obtain adequate training and their failure to supervise their agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq. and its implementing regulations.

## DAMAGES

46.  The Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-45 above.

47.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiffs have suffered significant and irreparable loss and injury.

48.  The Plaintiffs are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

49.  Karbusheva has suffered out-of-pocket expenses, embarrassment, humiliation, deprivation of her civil rights, injury to reputation, pain and suffering, inconvenience, and emotional and physical suffering as the result of the Defendants conduct.

50.  IFHC has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $31,972.76, which continue to accrue.

51.  IFHC has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $10,000.00.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

52.  IFHC has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

53.  IFHC has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $37,058.77.

54.  In addition to the injuries suffered by the Plaintiffs, the Defendants have also caused significant and irreparable loss and injury to a number of as-of-yet unidentified persons.  Such as-of-yet unidentified victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

55.  All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

56.  A Victims' Compensation Fund should be established in an amount to be determined at trial to adequately compensate identified and as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

    a.  IFHC shall be assigned the task of managing and administering the Victims' Compensation Fund.  IFHC shall be compensated for all time spent administering said Fund at the rate of $47.57 per hour.  IFHC shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

    b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c. Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d. Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, IFHC shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday. IFHC shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 1878 Overland Road, Boise, Idaho 83705; (2) DisAbility Rights Idaho, 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 505 North Main Street, Moscow, Idaho 83843; and (3) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e. Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, IFHC shall send by first-class mail, postage

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.   Nothing in this section shall preclude IFHC from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.   Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact IFHC in response to the Notice.  IFHC shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  IFHC will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.  The Defendants shall have fourteen (14) days to review the declaration and to provide to IFHC any documents or information that it believes may refute the claim.

h.   After receiving the Defendants' refutation, if any, IFHC shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants. When the Court issues an order approving or changing IFHC's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

(10) days of the Court's order, deliver to IFHC checks payable to the aggrieved persons in the amounts approved by the Court.  In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to IFHC as described above.  No aggrieved persons shall be paid until he or she has executed and delivered to counsel for IFHC a signed and notarized statement releasing the Defendants from all claims related to the subject property.

i.   In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by IFHC and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act.  Said education fund shall be administered by IFHC.

j.   The Defendants shall permit IFHC, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

57.  The Court should award to the Plaintiffs and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined at trial.

58.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

15

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

59.  The Court should award to the Plaintiffs and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

60.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiffs Intermountain Fair Housing Council, Inc. and Elena Karbusheva pray that the Court enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to Karbusheva actual and compensatory damages in an amount to be determined by the Court to fully compensate her for her out-of-pocket expenses, embarrassment, humiliation, deprivation of her civil rights, injury to reputation, pain and suffering, inconvenience, and emotional and physical suffering as the result of the Defendants' conduct.

C.  That the Court award to IFHC and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $31,972.76, which continue to accrue;

D.  That the Court award to IFHC and against the Defendants actual damages in compensation for the necessary future diversion of IFHC's resources in the amount of $10,000.00;

E.  That the Court award to IFHC and against the Defendants actual damages in compensation for IFHC's lost economic opportunity in the amount of $1,000.00;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

F.  That the Court award to IFHC and against the Defendants actual damages in compensation for the frustration of IFHC's mission in the amount of $37,058.77;

G.  That the Court enter an order establishing a Victims' Compensation Fund an amount to be determined at trial by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 56 above;

H.  That the Court award to the Plaintiffs and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined at trial;

I.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

J.  That the Court award to the Plaintiffs and against the Defendants reasonable attorney's fees and costs incurred in this action;

K.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

L.  That the Court order any further and additional relief as the interests of justice may require.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs demand a trial by jury on all issues.

DATED this _30th_ day of _October_, 2013.

_____/s/_____

KEN NAGY
Attorney for Plaintiffs

VERIFIED COMPLAINT AND          17
DEMAND FOR JURY TRIAL

KEN NAGY
Attorney at Law
Lewiston, Idaho

ZOE ANN OLSON, being first duly sworn on her oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., a Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

/s/
_____
ZOE ANN OLSON


STATE OF I D A H O   )
                  : ss
County of ___ADA___ )

       I, ___Carrie House_____, a Notary Public for said state, does hereby certify that on the __30th__ day of ____October_____, 2013, personally appeared before me ZOE ANN OLSON, Executive Director of the Intermountain Fair Housing Council, Inc. who, being by me first duly sworn, declared that she signed the foregoing document as such, and that the statements therein contained are true and accurate as she verily believes.

     SEAL
   CARRIE HOUSE
   Notary Public
   State of Idaho

/s/ (Carrie House)
_____
Notary Public in and for the State of __Idaho____
Residing at: __Boise ID_____
My commission expires: __3/1/2019_____

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

ELENA KARBUSHEVA, being first duly sworn on her oath, deposes and says:

    I am a Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

                                           /s/
                          _____
                          ELENA KARBUSHEVA

STATE OF I D A H O  )
                    : ss
County of __ADA____ )

    I, ___Carrie House_____, a Notary Public for said state, does hereby certify that on the __30th__ day of _____October_____, 2013, personally appeared before me ELENA KARBUSHEVA who, being by me first duly sworn, declared that she signed the foregoing document as such, and that the statements therein contained are true and accurate as she verily believes.

      SEAL

      CARRIE HOUSE
      Notary Public
      State of Idaho             /s/ (Carrie House)
                              _____
                              Notary Public in and for the State of __Idaho____
                              Residing at: __Boise, ID_____
                              My commission expires: __3-1-2019_____

VERIFIED COMPLAINT AND       19
DEMAND FOR JURY TRIAL

                                                            **KEN NAGY**
                                                      **Attorney at Law**
                                                    **Lewiston, Idaho**

# APPENDIX A:

## PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff IFHC has incurred significant pre-litigation expenses as a result of the Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff IFHC has sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint

---

[1]*See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

preparation, counseling and other activities with regards to this matter.  As a result of these

activities, it has incurred expenses as follows:

      a.  Counseling Costs:                                  $801.01

      b.  Investigation Costs:                            $2,128.98

      c.  Educational efforts:                            $24,429.79

      d.  Cost of Deferred Actions:                   $2,628.98

      e.  <u>Litigation costs and fees (as of initiation of formal litigation):</u>  $1,984.00

                       Total Past Diversion of Resources:   $31,972.76

Further litigation of these matters will result in an increase in the Plaintiff IFHC's

diversion of resources, as well as other damages.

**2.  Future Diversion of Resources**

      The Plaintiff IFHC has an affirmative duty to ensure the Defendants' ongoing compliance

with the FHA, with regards to both the subject property as well as any future developments in

which the Defendants may participate.  Such monitoring activities include site visits, training of

Defendants and their employees and agents, counseling of victims, and testing.

      The Plaintiff IFHC expects to incur the following expenses as a result of the current

violations:

      a.  Future Advertising Costs:                   $5,000.00

      b.  Cost of future training:                      $2,000.00

      c. <u>Costs of Future Monitoring/Testing:</u>          $3,000.00

                    Total Future Diversion of Resources:   $10,000.00

VERIFIED COMPLAINT AND         21
DEMAND FOR JURY TRIAL

### 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff IFHC to divert limited resources and manpower away from grant-writing activities.  The Plaintiff IFHC could reasonably expect to have obtained funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the Defendants' actions

   a.  Loss of Funding:                                    $1,000.00

### 4.  Frustration of Mission

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff IFHC to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the Defendants' discriminatory actions, the Plaintiff IFHC's mission of furthering fair housing has been significantly frustrated, and the Plaintiff IFHC has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff IFHC in guaranteeing fair housing to all residents of the state.  The Plaintiff IFHC has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with the FHA.

VERIFIED COMPLAINT AND                          22
DEMAND FOR JURY TRIAL                                              **KEN NAGY**
                                                                  **Attorney at Law**
                                                                  **Lewiston, Idaho**

The Plaintiff IFHC measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

a.  Frustration of Mission                          $37,058.77

## **TOTAL DAMAGES**

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

1.  Out-of Pocket Expenses and Past Diversion of Resources:      $31,972.76

2.  Future Diversion of Resources:                              $10,000.00

3.  Lost Economic Opportunity:                                  $1,000.00

4.  Frustration of Mission:                                     $37,058.77

                                    Total Damages:     $80,031.53

VERIFIED COMPLAINT AND            23
DEMAND FOR JURY TRIAL
                                                    **KEN NAGY**
                                                  **Attorney at Law**
                                                  **Lewiston, Idaho**

**APPENDIX B:**

**CALCULATION OF VICTIMS' COMPENSATION FUND**

## I.  INTRODUCTION

In addition to the damages incurred by the Plaintiffs, a number identified and of as-of-yet

unidentified victims have also suffered damages as the result of the Defendants' discriminatory

actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should

be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the

establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair

Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth*

*Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008

establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of*

*America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July

18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States*

*of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order

entered March 11, 2005 establishing Victims' Compensation Fund in the amount of

$100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-

BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the

amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case

No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims'

Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L.*

*Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated. The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are owned and managed by the Defendants is currently unknown.

B.  The number of months that the Defendants have managed property that is subject to the requirements of the Fair Housing Act, as of the filing of this complaint, is currently unknown.

C.  On average, each of the units could be expected to be rented to a new tenant who is disabled every twelve months.

D.  The U.S. Census Bureau Population Survey of 2000 indicates that, for the state of Idaho, persons (age 5+) with a disability comprised 13.0% of the population.

E.  The amount of damages awarded to victims of disability discrimination in violation of the Fair Housing Act in administrative proceedings before the United States Department of Housing and Urban Development has been $2,500.00 or more (this is a conservative estimate on the amount of damages that should be awarded to a victim of such discrimination, and is therefore not intended in any way to be a statement of the damages that are reasonably owing to individual victims, which instead must be determined on a case by case basis with full consideration of the facts of each such case).

VERIFIED COMPLAINT AND                            25
DEMAND FOR JURY TRIAL

F.  The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

G.  The Plaintiff IFHC should be compensated at its hourly overhead rate of $47.57 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of at least $100.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

a.  <u>Step One.</u>  The amount of funds that can reasonably be expected to be necessary to compensate identified victims should be calculated as follows: the total number of units at the subject property **<u>times</u>** the total number of months that said units have been subjected to the FHA **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** $2,500.00.

b.  <u>Step Two.</u>  The amount of funds that can reasonably be expected to be necessary incurred by the fund administrator for work performed in administering the fund should be calculated as follows: the total number of units at the subject property **<u>times</u>** the total number of months that said units have been subjected to the FHA **<u>divided by</u>** twelve (to determine the number of prospective renters who have encountered discrimination at the subject property) **<u>times</u>** three (hours necessary to administer fund per victim) **<u>times</u>** $47.57.

c.  <u>Step Three.</u>  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator for out-of-pocket expenses in administering the fund should

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL                    26

**KEN NAGY**
**Attorney at Law**
**Lewiston, Idaho**

be calculated as follows: the total number of units at the subject property **times** the total number

of months that said units have been subjected to the FHA **divided by** three (to determine the

number of prospective renters who have encountered discrimination at the subject property)

**times** $100.00.

      d.  <u>Step Four.</u>  The total amount of the Victims' Compensation Fund is the amount

determined by adding the results of Step One, Step Two and Step Three.

      The formula described above can be expressed as follows:

$$\frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; \$2,500.00}{12}$$

$$+ \quad \frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; 3 \; \mathbf{X} \; \$47.57}{12}$$

$$+ \quad \frac{(\text{number of units } \mathbf{X} \text{ number of months rented}) \; \mathbf{X} \; \$100.00 = \text{amount of fund}}{12}$$

**3.  Calculation of Victims' Compensation Fund**

      Applying the underlying principles, as described above, and the applicable figures, as set

forth above, the victims' compensation fund should be established in an amount to be determined

at trial once the number of units at the Subject Property and the number of months said units

have been rented is determined in order to compensate identified victims.

VERIFIED COMPLAINT AND         27
DEMAND FOR JURY TRIAL